# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:15-cv-00129-MR

| | | |
|---|---|---|
| **SELEE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **McDANEL ADVANCED CERAMIC** | ) | |
| **TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Affidavit for Attorneys' Fees and Costs re: Discovery Sanctions [Doc. 94]; Plaintiff's Motion for Attorneys' Fees and Costs [Doc. 97]; and the Defendant's Motion for Judgment as a Matter of Law [Doc. 100].

## I.     PROCEDURAL BACKGROUND

The Plaintiff SELEE Corporation initiated this action on June 30, 2015, asserting claims of trademark infringement, false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., as well as claims for unfair competition and false advertising under North Carolina law, against the Defendant McDanel Advanced Ceramic Technologies, LLC, for its alleged use of the Plaintiff's registered mark "engineered ceramics."

[Doc. 1]. The Defendant filed an answer asserting various affirmative defenses and counterclaims for unfair competition, a declaration of non-infringement, cancellation of the Plaintiff's trademark registration, and a declaration of the Defendant's right to fair use of the term "engineered ceramics." [Doc. 8].

A Case Management Plan was entered [Doc. 17], and the parties proceeded to engage in discovery. In June 2016, the Plaintiff filed a motion to compel certain discovery from the Defendant and to levy sanctions for the Defendant's destruction of relevant evidence. [Doc. 28]. In August 2016, the Court entered an Order granting the Plaintiff's motion to compel in part, finding that the Defendant had not fulfilled its duty to conduct a reasonable investigation of its electronic files for documents responsive to the Plaintiff's discovery requests. The Defendant was ordered to search all of the electronic data in its possession for all documents relating to the use of the term "engineered ceramics" and to produce such documents to the Plaintiff on or before September 9, 2016. [Doc. 41 at 7, 12].

On September 9, 2016, the Defendant's counsel submitted a letter to the Court, advising that the Defendant had undertaken a database-wide search, and that a total of 2,865,148 documents had been collected and searched, comprising over 790 gigabytes of data, with an additional terabyte

of data to be processed in the coming days.  Counsel further stated that it anticipated that this round-the-clock document processing would not be completed until September 16, 2016.  [Doc. 42].  At the final pretrial conference on October 28, 2016, the parties reported that the Defendant had completed its search and that additional documents had been produced. The Court ordered the Defendant to pay as a sanction the Plaintiff's reasonable attorneys' fees related to prosecuting this discovery issue.  The Plaintiff's counsel was directed to file an affidavit in support of such an award following the conclusion of the trial.[1]

The case proceeded to trial on November 7, 2016.  Upon conclusion of the Plaintiff's evidence, the Defendant moved for the entry of judgment as a matter of law, which was denied.  Following two days of evidence, the jury returned a verdict in favor of the Plaintiff on the issue of infringement and awarded the Plaintiff $1.00 in damages.  [Doc. 91 at 1, 2].  The jury further found that the Defendant's trademark infringement was willful.  [Id. at 2].  The Court entered a Judgment in accordance with the jury's verdict on November 23, 2016.  [Doc. 99].

---

[1] The Plaintiff filed an affidavit in support of its request for an award of attorneys' fees and costs incurred in relation to the Defendant's discovery misconduct on November 22, 2016. [Doc. 94].  Certain exhibits relative to that affidavit were filed under seal.  [Doc. 95].

3

Following entry of the Judgment, the Defendant renewed its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  [Doc. 100].  The Plaintiff, in turn, filed a motion for an award of attorneys' fees and costs pursuant to the Lanham Act.  [Doc. 97].  These matters have been fully briefed and are therefore ripe for disposition.

## II.   DISCUSSION

### A.   Defendant's Motion for Judgment as a Matter of Law

#### 1.   Standard of Review

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a district court may grant a judgment as a matter of law "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party . . . ."  Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citing Fed. R. Civ. P. 50(b)).  The district court must deny a motion for judgment as a matter of law if, "giving the non-movant the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him."  Cline, 144 F.3d at 301 (quoting Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984)).  In making such a determination, the court cannot re-weigh the evidence or the credibility of the witnesses; rather, the court must "assume that testimony in favor of the non-moving party is credible, unless totally incredible on its face,

4

and ignore the substantive weight of any evidence supporting the moving party." <u>Cline</u>, 144 F.3d at 301 (internal quotation marks and citation omitted).

## 2. Discussion

In its motion, the Defendant argues that the jury did not have a legally sufficient basis to find infringement of the Plaintiff's trademark under the Lanham Act. Specifically, the Defendant argues that the evidence produced at trial at best demonstrated that the Defendant's use of the term "engineered ceramics" was a "non-trademark" use and therefore did not infringe on the Plaintiff's mark. [Doc. 100-1].

Viewing the evidence presented at trial in the light most favorable to the Plaintiff, the Court concludes that there is substantial evidence to support the jury's verdict. The Plaintiff presented evidence that it owns a registered trademark for the term "engineered ceramics." The Plaintiff learned that the Defendant used a confusingly similar variation of the mark in 2014 in connection with its online advertising of competing products for sales to competing customers. The Defendant was given actual notice of Plaintiff's rights in the trademark in 2014 and was asked to cease use of the mark, along with any confusingly similar variations thereof. In response to the Plaintiff's cease and desist letter, the Defendant deliberately chose to continue to use the Plaintiff's mark and in fact increased its use of the mark

5

by switching from a confusingly similar use ("engineered cerami*c*") on a general webpage to the exact terms of the mark ("engineered ceramic*s*") on directly competing product webpages and print advertising.

From the evidence presented by the Plaintiff, the jury reasonably concluded that the Defendant's use created a likelihood of confusion. See George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (discussing likelihood of confusion factors); Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463-64 (4th Cir. 1996); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). Specifically, the Plaintiff presented evidence that the mark had been in continuous use since the 1960's and was therefore strong; that the Plaintiff and the Defendant were competitors; that the Defendant used the exact terms of the mark; that the Defendant's use was intentional and willful; that the Defendant's use was in connection with advertising the same competing products; and that the Defendant's use was in connection with advertising in the same manner to competing customers.

The Plaintiff's evidence further provided a substantial basis for the jury's finding that the Defendant's use did not constitute fair use under the Lanham Act. Descriptive, or "classic" fair use arises when a defendant uses a trademark "in its primary, descriptive sense to *describe* the defendant's

goods or services." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 169 (4th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the defendant must have acted in good faith. See Shakespeare Co. v. Silstar Corp. of Am., Inc., 110 F.3d 234, 240 (4th Cir. 1997). Here, the Plaintiff produced evidence from which the jury reasonably concluded that the Defendant's use of the term "engineered ceramics" was not confined simply to describing its products or services and was intentionally done in disregard for any trademark rights of the Plaintiff.

For all of these reasons, the Court concludes that there is substantial evidence to support the jury's verdict on infringement. Accordingly, the Defendant's renewed motion for judgment as a matter of law is denied.

## B. Plaintiff's Request for Attorneys' Fees as Discovery Sanction

The Plaintiff seeks a total of $81,270.31 in fees and costs incurred in connection with pursuing its discovery motion against the Defendant. The Defendant opposes the Plaintiff's request, arguing that the amount of fees requested is grossly excessive.

In an Affidavit submitted in support of the Plaintiff's request, attorney John R. Perkins, Jr. states that "Plaintiff billed a significant amount of time in relation to Defendant's failure to [respond to] appropriate discovery in this

7

case beginning as early as April 26, 2016." [Doc. 94-3 at ¶ 16]. While Perkins states that the billing records submitted in support of the Plaintiff's request are "limited to only that time spent by the designated billing attorney directly on this [discovery] issue" [id. at ¶ 17], the billing records submitted are in fact not so limited. Rather, these billing records, which are in excess of fifty pages, include *all* of the work performed by its counsel and their staff throughout the course of this litigation. The Court will not pore over fifty pages of billing records in order to discern which of the hours claimed related to the one discovery issue for which fees were allowed. Moreover, if the Plaintiff's claimed amount of fees is to be accepted at the hourly rates that they identified ($300-$375 per hour), the Plaintiff's attorneys would have had to have devoted more than 200 hours to this one discovery issue, which is clearly excessive.[2]

In light of the excessive nature of the claimed fees and the Plaintiff's failure to specifically identify the hours spent on the discovery issue, the

---

[2] As an additional grounds for denying the Plaintiff's request for fees, the Court notes that the Plaintiff relies solely on the affidavits of its own counsel and has failed to offer any affidavits from other attorneys to establish the prevailing market rates for intellectual property attorneys in this area. See Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (quoting Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.")).

Court, in the exercise of its discretion, determines that the demand and discussions regarding the Defendant's inadequate discovery responses, and the preparation of the motion and brief regarding the motion to compel, could easily have been completed in 25 hours. The Court therefore will award the Plaintiff $7,500.00 in fees and costs related to the discovery issue.

### C. Plaintiff's Request for Attorneys' Fees under the Lanham Act

The Plaintiff also moves the Court to find that this case is "exceptional" and to award $661,421.50 in attorneys' fees under the Lanham Act. The Defendant opposes the Plaintiff's motion, arguing that this case is not "exceptional." Alternatively, the Defendant argues that the Plaintiff's requested fees are excessive.

Section 1117(a) of the Lanham Act authorizes a plaintiff in a trademark infringement case to recover reasonable attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a). The Court may find a case to be "exceptional" if it finds "in light of the totality of the circumstances, that (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular

circumstances to advance considerations of compensation and deterrence." Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015) (quoting in part Octane Fitness, LLC v. ICON Health & Fitness, Inc., -- U.S. --, 134 S. Ct. 1749, 1756 n.6 (2014) (other internal citations and quotation marks omitted). A jury's finding of willfulness, without more, is not sufficient to support a finding that a case is "exceptional" within the meaning of § 1117(a). See Exclaim Mktg., LLC v. DirecTV, LLC, 674 F. App'x 250, 260 (4th Cir. 2016).

## 1. Frivolous or Objectively Unreasonable

"A finding that a claim is objectively unreasonable is to be based on 'an objective assessment of the merits of the challenged claims and defenses.'" Exclaim Mktg., LLC v. DirecTV, LLC, No. 5:11-CV-684-FL, 2015 WL 5725703, at *7 (E.D.N.C. Sept. 30, 2015), aff'd in part, 674 F. App'x 250 (4th Cir. 2016) (quoting Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544 (Fed. Cir. 2011) (internal quotations omitted)). Unless an argument or defense is "so unreasonable that no reasonable litigant could believe it would succeed," such argument or defense cannot be found to be objectively baseless for purposes of awarding attorney fees." Exclaim Mktg., 2015 WL 5725703, at *7 (citations omitted).

10

Upon careful consideration of the arguments and affirmative defenses asserted by the Defendant throughout the course of litigation, the Court cannot conclude that the Defendant's position was objectively baseless. Notwithstanding the jury's verdict, this was a very close case on the issue of infringement. [See Doc. 103 at 12 (denying the Defendant's Rule 50 motion but noting that the Court had "serious doubts as to whether any verdict in favor of the plaintiff is going to hold up on appeal")]. Both parties filed motions for summary judgment on various claims and defenses prior to trial, and both motions were denied. The Court's denial of the Plaintiff's summary judgment motion strongly indicates that the defenses asserted by the Defendant were not entirely frivolous or unreasonable. See, e.g., LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014). This also was a case involving no damages: the Plaintiff did not offer any proof of loss resulting from the infringement, nor did it offer any proof of profits gained by the Defendant through its infringing conduct. In the absence of any apparent economic advantage gained by the Defendant, the Court cannot say that the Defendant was unreasonable in asserting that its use of the Plaintiff's mark did not constitute infringement.

## 2.     Unreasonable Manner of Litigation

A party's unreasonable litigation conduct may also warrant a finding that a case is so "exceptional" that an award of attorneys' fees is warranted. See Octane Fitness, 134 S. Ct. at 1757.  "Typically, this prong is satisfied where the non-prevailing party engages in some form of egregious conduct," such as filing false declarations or attempting to re-litigate issues decided prior to trial.  Exclaim Mktg., 2015 WL 5725703 at *8.

In arguing that the Defendant's litigation conduct as a whole was unreasonable, the Plaintiff relies primarily on the Defendant's unreasonable conduct with respect to the preservation and production of electronic discovery – misconduct for which the Defendant has already been sanctioned (see Section B, supra). While careful to point out that it is not attempting to seek double payment of attorneys' fees, the Plaintiff nevertheless argues that this misconduct is illustrative of the Defendant's overall misconduct throughout the course of the litigation.

After careful consideration of the record as a whole, the Court cannot say that this case as a whole was litigated in an unreasonable manner.  While the Defendant unreasonably delayed responding to the Plaintiff's discovery requests for electronic files, the Court notes that the Plaintiff's discovery requests themselves were excessively broad.  Instead of conferring with the

12

Plaintiff in an effort to narrow such requests, however, the Defendant refused to produce any electronic files whatsoever. As a result of the Defendant's intransigent behavior, the Court ordered the Defendant to respond to the Plaintiff's requests as propounded. Because the Plaintiff's requests were so broad, however, the documents ultimately produced by the Defendant's search proved to be largely unhelpful to the Plaintiff's case. In short, the parties' discovery dispute ended up being much ado about nothing.

The Defendant's stonewalling during the discovery process warranted the imposition of a sanction. Such misconduct, however, was not pervasive throughout this litigation such that the Court could say that the Defendant's litigation conduct as a whole was unreasonable. The Defendant will not be sanctioned twice for its discovery misconduct.

### 3. Compensation or Deterrence

Finally, the Court concludes that this case presents no specific need, based on the particular circumstances of this case, "to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

First, the Court addresses the issue of compensation. While the jury found that the Defendant willfully infringed the Plaintiff's mark, there was no evidence that the Plaintiff in fact suffered anything more than nominal harm

13

as a result of the infringement. The Plaintiff's CEO, Mark Morse, could not identify any lost sales caused by the infringement, and there was no evidence of damages of any kind presented. The Plaintiff also presented no evidence of actual confusion from any member of the purchasing public. The jury found that the Defendant's infringement, although willful, resulted in no adverse effect whatsoever to the Plaintiff, as shown by its nominal damage award of one dollar.

As for the consideration of deterrence, the Court finds that the need for deterrence has been adequately satisfied in this case. As the Court previously found, the Defendant pursued reasonable -- albeit ultimately unsuccessful -- affirmative defenses to the Plaintiff's claim of infringement. This was not a case where the Defendant persisted in litigation even though its defenses were clearly lacking. See, e.g., Design Res., Inc. v. Leather Indus. of America, No. 1:10CV157, 2016 WL 5477611, at *7 (M.D.N.C. Sept. 29, 2016) ("This court recognizes the importance of deterring litigants from pursuing their claims even when the claim has fallen apart following discovery due to a lack of supporting evidence, reinforcing this court's decision to award attorney's fees."). The Plaintiff was awarded nominal damages for the Defendant's acts of infringement, and the Defendant has been enjoined from any further infringing use of the Plaintiff's mark. While

14

the Plaintiff is technically the prevailing party, both sides can claim victory in this judgment. The Plaintiff received an injunction prohibiting future infringing use by the Defendant, and the Defendant was not required to pay any damages. It is difficult for the Court to say that the Defendant should be deterred from defending an action in which it, to a certain degree, prevailed.

For all of these reasons, the Court concludes that this case is not "exceptional" within the meaning of the Lanham Act, and therefore, the Plaintiff is not entitled to an award of attorneys' fees pursuant to § 1117(a).

### D.    Plaintiff's Request for Costs under the Lanham Act

Finally, the Plaintiff seeks an award of costs in the amount of $38,266.56 pursuant to the Lanham Act, 15 U.S.C. § 1117(a).    The Defendant generally objects to the Plaintiff's request for costs on the grounds that the Plaintiff failed to move for costs under 28 U.S.C. § 1920.    The Defendant also argues that most of the claimed costs are not allowable.

Under the Lanham Act, a prevailing party "shall be entitled . . . to recover . . . the costs of the action."  15 U.S.C. § 1117(a).  The Lanham Act does not define the term "costs of the action."    As the Fourth Circuit has noted, however, this terminology is not unique to the Lanham Act, as identical language appears in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2), ERISA, 29 U.S.C. § 1132(g)(2), the Fair Labor

Standards Act, 29 U.S.C. § 216(b), the Right to Financial Privacy Act, 12 U.S.C. § 3417, the Expedited Funds Availability Act, 12 U.S.C. § 4010, the Truth in Savings Act, 12 U.S.C. § 4310, and other statutes. See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 371 (4th Cir. 2001) ("PETA"). The Court further noted that in construing such language in other statutes, other courts have construed the term "costs of the action" to allow only the types of costs permitted by 28 U.S.C. § 1920. See id. (citing Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 411 (7th Cir. 1999) (interpreting Fair Labor Standards Act) and Agredano v. Mutual of Omaha Cos., 75 F.3d 541, 544 (9th Cir. 1996) (construing ERISA)). In light of this authority, the Fourth Circuit held that a district court does not abuse its discretion by limiting the award of costs to those recoverable under § 1920. See PETA, 263 F.3d at 371 ("The district court was required to award [the plaintiff], as the prevailing party, no more than those costs required by § 1920.").

Section 1920 provides that the Court may tax as costs any of the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

16

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. An "award of costs to the prevailing party is a matter firmly in the discretion of the trial court." Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990).

In awarding costs pursuant to § 1920, the Court is further guided by Local Civil Rule 54.1, which sets forth certain categories of costs that may or may not be awarded to a prevailing party. This Rule states, in pertinent part, as follows:

(F) Taxable Costs. Items normally taxed include, without limitation:

(1) those items specifically listed on the bill of costs form. The costs incident to the taking of depositions (when allowable as necessarily obtained for use in the litigation) normally include only the reporter's attendance fee and charge for the original transcript of the deposition;

(2) premiums on required bonds;

17

(3) actual mileage, subsistence, and attendance allowances for necessary witnesses at actual cost, but not to exceed the applicable statutory rates, whether they reside in or out of this district;

(4) one copy of the trial transcript for each party represented by separate counsel;

(5) costs associated with private process servers;

(6) fees for service of summons, subpoena, and notices by private firms; and

(7) costs of the original videotape of a deposition and the appearance fee of a videographer in lieu of the costs of a transcript of the deposition.

**(G) Nontaxable Costs.** Items normally not taxed include, without limitation:

(1) multiple copies of depositions;

(2) daily copy of trial transcripts, unless prior Court approval has been obtained;

(3) copies of documents filed electronically; and

(4) attorney fees and attorney travel expenses;

(5) costs of shipping/mailing transcripts;

(6) costs for computer aided legal research including paralegal charges and computerized indices or optical discs produced for the benefit of counsel;

(7) costs associated with mediation;

(8) copy costs for any documents filed or served in electronic format;

18

(9) *pro hac vice* fees;

(10) costs for extraction and/or electronic configuration of data (emails) for the convenience of counsel absent any agreement among the parties pertaining to these costs; and

(11) costs associated with condensing a transcript, putting transcripts on a diskette or providing E-transcripts in addition to counsel receiving the original transcript.

LCvR 54.1.

Here, the Plaintiff seeks some costs which are clearly prohibited under Local Civil Rule 54.1(G), such as fees incurred in seeking admission *pro hac vice*, costs for mediation services,[3] and attorney travel and related expenses, such as baggage fees, hotels and meals. [See Doc. 95-1 at 53-55]. Other claimed costs, while not specifically addressed by § 1920 or the Local Rules, are similarly excludable, such as PACER fees, Mary Kay Inc. v. Ayres, 827 F. Supp. 2d 584, 594 (D.S.C. 2011) (PACER fees not allowable costs); FedEx and other postage costs, AM Props. v. Town of Chapel Hill, 202 F.

_____

[3] Local Civil Rule 16.3(B)(1) incorporates the state mediation rules found in N.C. Gen. Stat. § 7A-38.1. The mediation fees incurred in a state court matter are recoverable as costs, but that recovery is pursuant to North Carolina's costs provision, N.C. Gen. Stat. § 7A-305(d)(7), and not pursuant to § 7A-38.1. Regarding the recovery of mediation costs in an action in this Court, one must look to the federal costs statute and the express terms of Local Civil Rule 54.1(G), which dictate that mediation fees are *not* recoverable.

19

Supp. 2d 451, 456 (M.D.N.C. 2002) (FedEx, Express Mail, and postage charges generally not recoverable as costs); and computer storage expenses such as "Dropbox" fees, see, e.g., Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 513 (E.D.N.C. 2012) (denying award of costs incurred to purchase computer hard drives as such expenses are "properly considered overhead and not recoverable"), aff'd, 551 F. App'x 646 (4th Cir. 2014).

The Court will disallow the Plaintiff's claimed cost for service of process of a subpoena on CoorsTek ($164.00).  That subpoena was the subject of a motion filed on July 12, 2016, in which the Plaintiff moved for an extension of the discovery deadline for the limited purpose of allowing Plaintiff to enforce its subpoena against CoorsTek.   In denying the Plaintiff's motion, the Court found that the Plaintiff's subpoena was invalid and unenforceable because 1) it was issued from the wrong Court, Fed. R. Civ. P. 45(a)(2); 2) it failed to set out the text of Rule 45(d) and (e), Fed. R. Civ. P. 45(a)(1)(A)(iv); and 3) it commanded production of documents at a location greater than 100 miles from CoorsTek's office, Fed. R. Civ. P. 45(c)(2)(A).[4]   [Doc. 41]. Because the Plaintiff's subpoena to CoorsTek was clearly invalid and

---

[4] The Plaintiff issued a second subpoena which conformed to Rule 45, but was unenforceable because it was untimely pursuant to this Court's Pretrial Order.  [Id.].

unenforceable, the Court declines to award the cost of the service of that subpoena.

The Court will further disallow any claimed costs for which the Plaintiff fails to provide an adequate explanation for the expense. See Andrade v. Aerotek, Inc., 852 F. Supp. 2d 637, 645 (D. Md. 2012) (denying costs where the "entries lack[ed] the basic level of detail sufficient for the court to understand the nature of the costs or why they should be granted"); Scallet v. Rosenblum, 176 F.R.D. 522, 525 (W.D. Va. 1997) ("In order to recover costs a party is required to provide explanation and adequate supporting documentation for the bill of costs."). Therefore, the Court will not award costs for unspecified "services . . . in connection with deposition exhibits," unspecified "additional fees," general "photocopies," "and unspecified "depositions/transcriptions" when no explanation is provided as to why such expenses were necessary. [Doc. 95-1 at 54-55]. Additionally, the Court will not allow the claimed cost for "Dun & Bradstreet Credit Advisor" as no explanation is provided as to what service was provided or why this expense was incurred.

Based on the descriptions provided in the Plaintiff's billing summary, the following claimed costs appear to be recoverable under § 1920 and Local

Civil Rule 54.1. Given the lack of any specific objection to these costs by the

Defendant, the following will be allowed:

| | |
|---|---|
| Fee paid to Clerk of Court | $ 400.00 |
| Fee paid for service of process | $ 75.00 |
| Fee paid to USPTO for certified of Plaintiff's registered trademark | $ 15.00 |
| Fee paid to USPTO for certified of Defendant's registered trademark | $ 15.00 |
| Guillotin and Dodsworth – deposition attendance and transcripts | $ 2,236.65 |
| Barletto, Ingram, and Rheingrover -- deposition attendance and transcripts | $ 2,369.50 |
| Morse deposition transcript | $ 834.50 |
| Expert fees – Lott & Fischer | $ 2,655.00 |
| Expert fees – Lott & Fischer | $ 5,178.00 |
| Keyzer deposition transcript | $ 262.50 |
| Simpson deposition transcript | $ 313.10 |
| Kilgore deposition transcript | $ 926.20 |
| Olson deposition transcript | $ 458.50 |
| Demonstrative exhibits | $ 225.14 |
| Deposition transcripts for use at trial | $ 91.10 |

| | |
|---|---|
| Travel and related expenses for R. Kilgore in connection with trial testimony | $ 1,826.51 |
| **TOTAL COSTS** | **$17,881.70** |

Accordingly, the Court will award the Plaintiff $17,881.70 in costs pursuant to 15 U.S.C. § 1117(a).


# O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff is hereby awarded $7,500.00 in attorneys' fees and costs as a discovery sanction.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Judgment as a Matter of Law [Doc. 100] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Attorneys' Fees and Costs [Doc. 97] is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiff's Motion is **GRANTED** to the extent that the Plaintiff is hereby awarded $17,881.70 in costs. The Plaintiff's Motion is **DENIED** with respect to an award of any attorneys' fees.


**IT IS SO ORDERED.**

Signed: July 21, 2017

United States District Judge